**OPENTV, Plaintiff,**

v.

**LIBERATE TECHNOLOGIES, Defendants.**

No. C 02–0655 JSW(MEJ).

United States District Court, N.D. California.

Nov. 18, 2003.

Brooks M. Beard, George C. Harris, Harold J. McElhinny, Michael A. Jacobs, David E. Melaugh, Morrison & Foerster LLP, San Francisco, CA, for Plaintiff.

George A. Riley, Lori Lynn Behun, Mark E. Miller, Luann Simmons, Scott Schrader, O'Melveny & Myers, LLP, San Francisco, CA, Stamatios Stamoulis, O'Melveny & Myers LLP, New York City, Steven S. Cherensky, Weil, Gotshal & Manges LLP, Redwood Shores, CA, for Defendants.

## ORDER RE DISCOVERY

JAMES, United States Magistrate Judge.

Before the Court is the parties' October 10, 2003 joint letter to resolve a discovery dispute regarding the disclosure of source code for some of Liberate's products. Based on said letter, the telephonic conference on November 3, 2003, and relevant case law and statutory authority, the Court makes the following Order:

## BACKGROUND

On July 30, 2003, OpenTV asked Liberate to produce approximately 100 additional versions of source code for various Liberate products. Liberate objected to the request on the grounds that the task of identifying and duplicating each particular version of code demanded by OpenTV would be burdensome and much of the additional code requested is irrelevant to the action. Later, Liberate offered to make its complete source code database available at its facilities, along with a complete index to the database, and a Liberate engineer to provide technical assistance. OpenTV rejected this offer on the ground that it shifts the cost of production to the requesting party, as Liberate's source code must be extracted from Liberate's storage system to be reviewed. OpenTV contends that such cost-shifting is not warranted under the applicable case law.

## · DISCUSSION

*Legal Authority*

Federal Rule of Civil Procedure 26(b)(1)[1] provides that, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

However, unfettered discovery is not permissible. Rule 26(b)(2) imposes general limitations on the scope of discovery:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the

1. All references hereinafter to "Rules" refer to the Federal Rules of Civil Procedure.

importance of the proposed discovery in resolving the issues.

■ With these limitations in mind, "the presumption is that the responding party must bear the expense of complying with discovery requests, but may invoke the district court's discretion under Rule 26(c) to grant protective orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

■ In the context of discovery of electronic documents, "whether production of [such] documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production)." *Zubulake v. UBS Warburg LLC, et al.,* 217 F.R.D. 309, 318 (S.D.N.Y.2003) (hereinafter *"Zubulake I"*).

Shifting the cost of production from the producing party to the requesting party should be considered only when inaccessible data is sought. *See Zubulake v. UBS Warburg LLC, et al.,* 216 F.R.D. 280, 284 (S.D.N.Y.2003) (hereinafter *"Zubulake II"*). " 'In order to determine whether cost-shifting is appropriate for the discovery of inaccessible data, the following factors should be considered, weighted more-or-less in the following order' ":

1. The extent to which the request is specifically tailored to discover relevant information;

2. The availability of such information from other sources;

3. The total cost of production, compared to the amount in controversy;

4. The total cost of production, compared to the resources available to each party;

5. The relative ability of each party to control costs and its incentive to do so;

6. The importance of the issues at stake in the litigation; and

7. The relative benefits to the parties of obtaining the information.

*Zubulake II,* at 284 (*citing Zubulake I,* at 321).

*Legal Analysis*

■ The discovery dispute before the court is unique in that Liberate does not object to producing any of the source code that OpenTV requests. Rather, the dispute is over which party should bear the cost of extracting the source code from Liberate's database.

OpenTV argues that by making the requesting source code available for extraction, by OpenTV, at Liberate's facilities, is unwarranted cost-shifting. OpenTV explains that the responding party generally bears the expense of complying with discovery requests. While OpenTV notes that cost-shifting is sometimes warranted, OpenTV argues that all seven factors of the test articulated in *Zubulake* mitigate against Liberate's proposed cost-shifting.

Liberate argues that by agreeing to make its Complete Database available for inspection and copying, it has satisfied its obligations under Rule 34 by making the source code available for inspection in the order and manner in which it is kept in the ordinary course of business. In this way, Liberate asserts that it is not attempting to shift the cost of production to OpenTV.

As an initial matter, the Court finds that requiring OpenTV to travel to Liberate's facilities to extract and copy the requested source code amounts to cost-shifting in that OpenTV (the requesting party) would bear the cost of production. Requiring the requesting party to bear the cost of production is contrary to the presumption that the responding party bears the expense of complying with discovery requests. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). As such, the issue becomes whether such cost-shifting is warranted in this case. The Court's inquiry necessarily turns to the accessability of the requested data. With discovery of electronic documents, "whether production of such documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessable format." *Zubulake I,* at 318. Ac-

cessibility turns largely on the expense of production. *See Id.*

OpenTV claims that during the meet and confer process on this issue, Liberate extolled the complexity of its source code storage system. OpenTV asserts that because only Liberate is familiar with the intricacies of its storage system, only Liberate can efficiently retrieve code from it.

Liberate claims that its source code storage system is not a proprietary Liberate system. Liberate explains that its storage software, Perforce, is third-party commercial software that is used widely throughout the software development industry to store and manage source code. Additionally, Liberate claims that retrieval time for the code does not vary significantly based on an operator's familiarity with the Complete Database. Liberate has offered a complete index and a Liberate employee to help with the process.

In *Zubulake I*, the court suggested that, "in the world of electronic data...any data that is retained in a machine readable format is typically accessible." *Zubulake I*, at 318. In that case, the requested data consisted of e-mails contained on backup tapes. Backup takes are considered inaccessible, because they are not organized for retrieval of individual documents or files. *See id.*

In the present case, Liberate claims that the process of extracting source code from its database takes between 1.25 and 1.5 hours per source code (15–30 minutes to input predetermined search variables, and 1–1.5 hours for the database to execute the instructions). This amounts to between 125–150 hours of work to complete the extraction process for the approximately 100 additional versions of source code requested be OpenTV.

The Court finds such time requirements to be unduly burdensome and potentially expensive, and thus contrary to Rule 26(b)(2)(iii).[2] While the source code at issue in this case is not "backed up" in the manner of the e-mails at issue in the *Zubulake* cases, it is similarly expensive and time consuming to make it available in a usable form for discovery. For this reason, the Court finds that the requested electronic data is stored in an inaccessible format for the purposes of discovery.

■ Because inaccessible data is sought, cost-shifting is potentially appropriate in this case. See *Zubulake II*, at 284. The following factors will be considered to measure the appropriateness of cost-shifting here:

1. The extent to which the request is specifically tailored to discover relevant information;

2. The availability of such information from other sources;

3. The total cost of production, compared to the amount in controversy;

4. The total cost of production, compared to the resources available to each party;

5. The relative ability of each party to control costs and its incentive to do so;

6. The importance of the issues at stake in the litigation; and

7. The relative benefits to the parties of obtaining the information.

*Zubulake II*, at 284 (*citing Zubulake I*, at 321).

*Factors One and Two—Relevance and Availability*

■ OpenTV asserts that the requested 100 additional versions of source code are unarguably the best evidence regarding the functionality of a software product, especially since Liberate has not yet produced an operational version of any of the accused products in this infringement action.

On this point, Liberate argues that certain versions requested by OpenTV are irrelevant because they are only minor upgrades with no significant differences from other requested product releases.

The more likely it is that the requested source code contains information that is relevant to a claim and unavailable from other

---

2. During the November 3, 2003, telephonic conference, counsel for OpenTV suggested that it would likely hire a third party to perform the extraction and copying process if the Court required a shifting of costs from the responding to

the requesting party. OpenTV did not have an estimate of the cost involved, but the Court noted, and the parties agreed, that the process would involve over 3 weeks of work for a single person.

sources, the fairer it is that the responding party reduce the information to a usable form at its own expense. *See Zubulake II,* at 284.

Here, the requested source code for the minor upgrades in Liberate's products is relevant as it is the software product itself. Also, the Court notes that Liberate is unwilling to stipulate that if OpenTV proves infringement as to a major release, that infringement has also been proven as to minor upgrades. Additionally, the parties do not disagree that Liberate's database is the only source from which the requested source code is available.

Because the requested source code is highly likely to contain relevant information and is unavailable from another source, these two factors weigh against cost-shifting and in favor of Liberate, as the responding party, bearing the cost of reducing the source code to a usable form.

*Factors Three, Four, and Five—The Cost Factors*

Here, the parties failed to estimate or indicate the cost of production, the amount in controversy, or the resources available to each party. In the joint letter, OpenTV makes conclusory statements that the cost of production is small in comparison to the amount in controversy and in comparison to the resources available to both parties. Liberate makes no statements to the contrary.

A responding party should not be required to pay for the production of inaccessible electronic data if the cost of such production is significantly disproportionate to the value of the case, i.e. disproportionately expensive discovery warrants cost-shifting. *See Zubulake II,* at 288.

While the parties failed to provide the Court with any of the necessary figures to analyze the total cost of production compared with the amount in controversy (factor three), the Court has no doubt that this infringement action has the potential for recovery in the hundreds of thousands of dollars. While the cost for production of the source code (potentially hiring a third party to extract and copy the code) may be expensive, it likely pales in comparison to the overall amount in controversy. As such, the cost of production of the requested source code is not disproportionate to the overall amount in controversy, and therefore does not require cost-shifting.

Regarding the resources available to each party (factor four), there is no reason for the Court to believe that either party has a lack of resources in the case. Unlike the *Zubulake* cases where the plaintiff was an individual suing a corporation, both parties here are corporations with the financial ability to fund infringement litigation. Because the parties here are similarly situated, this factor weighs in favor of cost shifting.

With respect to the relative ability of each party to control costs and its incentive to do so (factor five), the requested source code is stored in Liberates's database. OpenTV claims that Liberate is best able to control the costs of production, as only Liberate is familiar with the intricacies of its storage system giving it the ability to efficiently retrieve code from it. Also, OpenTV is concerned that results produced from OpenTV's use of Liberate's database may be wrong and devoid of evidentiary value.

Liberate claims that the time required for the retrieval of code does not vary significantly based on an operator's familiarity with the database, because the operator merely imputes predetermined search variables and waits for the database to execute those instructions. Also, Liberate argues that the software it uses to store code, Perforce, is widely used throughout the software industry and thus not a proprietary Liberate system. Liberate argues that with the complete database, a Liberate employee to assist with the retrieval, and an index, OpenTV has everything it needs to extract source code from its database. Additionally, Liberate offers to authenticate the source code extracted by OpenTV.

The Court finds that because the source code is stored in Liberate's database, Liberate is in best position to control the cost of production. While Liberate's offer to authenticate code extracted by OpenTV eliminates the problem of evidentiary authority, it adds a step, and thus adds cost to the pro-

duction. As such, this factor weighs against cost-shifting.

*Factor Six—The Importance of the Issues at Stake*

This is an infringement action. While parties certainly have an interest in protecting their intellectual property rights, there is no indication that this case presents novel issues. As such, this factor is neutral.

*Factor Seven—Benefits to the Parties in Obtaining the Information*

OpenTV argues that Liberate will take some benefit from the discovery, as the requested source code can ground non-infringement arguments as well as infringement arguments. While this may be true, there is no question that OpenTV stands to benefit far more from the requested source code than does Liberate. As such, this factor weighs in favor of cost-shifting.

In summary, factors one through three as well as factor five weigh against cost-shifting, while factors four and seven weigh in favor and factor six is neutral. While the list of factors is instructive, it "is not merely a matter of counting and adding." *Zubulake II,* at 289. Because of the undue burden and expense involved in extracting and copying the source code, some cost-shifting is warranted in this case. The Court finds that because the parties are similarly situated, they are to split equally the cost of extraction of the source code from Liberate's database. Liberate is to bear the cost of copying the source code for OpenTV once it has been extracted, as "the responding party should always bear the cost of reviewing and producing electronic data once it has been converted to an accessible form." *See Zubulake II,* at 290.

## CONCLUSION

For the reasons stated above, the Court finds that the parties are to equally share the cost of extracting the requesting source code from Liberate's database and Liberate is to solely bear the cost of copying the source code once it is extracted.

IT IS SO ORDERED.